# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | No. 11 CR 233 |
| v. | ) | |
| | ) | The Honorable Joan B. Gottschall |
| CHRISTOPHER R. CONSAGO | ) | |
| | ) | |
| | ) | |

## MEMORANDUM ORDER AND OPINION

Christopher Consago has been charged with one count of bank robbery in violation of 18 U.S.C. § 2113. Before the court are his outstanding pretrial motions, which include: (1) his motion to compel disclosure and inspection of the mental health and drug addiction counseling treatment records of witness-informant Jennifer Barak, (2) his motion to exclude lay opinion identification testimony and evidence and request for an evidentiary hearing, and (3) his motion to suppress identification testimony and request for an evidentiary hearing. For the reasons explained below, the motions are granted in part and denied in part.

### I. ANALYSIS

**A.** *Defendant's Motion to Compel Disclosure and Inspection of Mental Health and Drug Addiction Counseling Treatment Records of Witness-Informant Jennifer Barak*

Government witness-informant Jennifer Barak is the mother of Consago's child. After viewing surveillance photos of the robbery, she told FBI agents that she recognized the man robbing the bank as Consago. Barak also told the agents that Consago had told her that he had committed the robbery. Consago has moved to compel disclosure and inspection of Barak's mental health and drug addiction counseling treatment records (after an *in camera* review), averring that during their romantic relationship, Consago "was aware that Barak suffered from

1

bipolar disorder, a mental illness," that she was "on medication for treatment of mental illness" and that she "is a drug addict who frequently used cocaine," subject to drug binging. (Def.'s Mot. to Compel at 2-3, July 12, 2011, ECF No. 27.) Barak's mental health and addiction difficulties, Consago argues, "might affect both her ability to accurately perceive events and her ability to relate the truth." (Def.'s Mot. to Compel at 2, July 12, 2011, ECF No. 27.)

The government argues that Consago's motion must fail since he "has not alleged that those records are in the possession or control of the government, nor are those records (if they exist) actually in the government's possession or control." (Gov't's Resp. to Def.'s Mot. to Compel at 2, July 26, 2011, ECF No. 41.) The government is correct that it is not required, under *Brady v. Maryland*, 373 U.S. 83 (1963), to turn over records that it does not have in its possession. In *United States v. Hach,* 162 F.3d 937, 946 (7th Cir. 1998), the defendant argued that his ability to cross-examine a government witness effectively was impaired because the district court failed to obtain the witness' medical and psychiatric records for the purpose of conducting an *in camera* review; however, the government did not have the records in its possession or control and the witness refused to consent to their release. The Seventh Circuit held that the defendant's inability to show that the records sought were in the government's possession was fatal to his *Brady* claim.[1]

---

[1] In reaching this conclusion, the Seventh Circuit relied on a case from the Eighth Circuit and a case from Maryland; the Maryland case analyzed a claim for production under *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). The court also noted that Wisconsin state courts, based on Wisconsin state law, have ruled that where the state is not in possession of a witness' private medical records, the defendant must have access to them or the witness may not testify. *Hach*, 162 F.3d at 947 n.5 (citing *State v. Shiffra*, 499 N.W.2d 719, 722 (Wis. Ct. App. 1993)). The Illinois courts have held, relying on Illinois law, that evidence of a witness' mental health problems are relevant to the witness' credibility. *See, e.g.*, *People v. Fillyaw*, 948 N.E.2d 1116, 1134 (Ill. App. Ct. 2011) ("[T]he mental health history of a witness is relevant as it relates to credibility, and it is thus a permissible area of impeachment."); *People v. Lindsey*, 73 Ill. App. 3d 436, 447-78 (Ill. App. Ct. 1979) ("The preclusion from consideration by the jury of Watkins' mental history was erroneous. He was the only eyewitness to the alleged crimes who was not directly implicated in their commission. His testimony was pivotal. The jury should have been allowed to evaluate his testimony in light of that history for the purpose of assessing his ability to observe, recall and relate."). In a case where the records were in the state's hands, the Illinois Supreme Court noted that the refusal to permit discovery of

Nevertheless, it cannot be gainsaid that such evidence may be material and must be disclosed, at least for an *in camera* inspection, if the government possesses it. *See United States v. Mazzola*, 217 F.R.D. 84, 89 (D. Mass. 2003) ("Mental disorders such as an addiction to drugs are highly probative of credibility and may materially effect the accuracy of a witness' testimony. (citing *United States v. Lindstrom*, 698 F.2d at 1160 ("conservative list" of mental defects that "materially affect the accuracy of testimony" includes "drug addiction")))); *see also United States v. Robinson*, 583 F.3d 1265, 1272-73 (10th Cir. 2009) ("As even the dissent concedes, the CI's use of prescription drugs is relevant evidence given its potential to color his testimony, particularly in light of CI's insistence that only the passage of time explained his memory lapses." (citing *United States v. Jones*, 213 F.3d 1253, 1261 (10th Cir. 2000), and *United States v. Clemons*, 32 F.3d 1504, 1511 (11th Cir. 1994) ("[A] witness's use of drugs may not be used to attack his general credibility, but only his ability to perceive the underlying events and to testify lucidly at trial."))); *United States v. Lindstrom*, 698 F. 2d 1154, 1163 (11th Cir. 1983) ("[A]ppellants contend that the trial judge abused his discretion in denying them access to the psychiatric records of that same witness. Lindstrom and Slater argue that this material was necessary to test the perception, credibility and motivation of the witness effectively. We agree."); *Greene v. Wainwright*, 634 F.2d 272, 274-76 (5th Cir. 1981) (holding that it was an abuse of discretion for the district court to prohibit the defendant from examining the government's star witness about his "mental condition and about certain bizarre criminal actions" since "[h]is credibility was crucial to the state's case").

Consago's affidavit provides evidence that Barak suffered from mental health issues and drug addiction during the relevant time period. The government has asserted that it does not

---

such evidence can be reversible error. *People v. Dace*, 104 Ill.2d 96, 103 (1984), *overruled by implication on other grounds in People v. Schmidt*, 126 Ill.2d 179 (1988).

have any of Barak's psychiatric records. Poised between the potential importance of this evidence and the lack of any obligation on the part of the government to turn it over, the court will hold a brief hearing, at a time to be determined before trial, at which Consago can request that Barak authorize the release of her medical records. If she refuses, the court will permit Consago to cross-examine Barak on the subject of her mental health and addiction history outside the presence of the jury. The court will, once it has heard the evidence, determine whether any such evidence may be presented to the jury. In the court's view, Consago would be well served if his attorney were prepared to inform the court if the court has any authority to order the release of Barak's mental health and drug treatment records, assuming Barak refuses to consent to their release.

B.   *Defendant's Motion to Suppress Identification Testimony and Request for an Evidentiary Hearing*

Defendant has moved to exclude testimony and evidence concerning a photo identification of him by two United States Probation Officers, Tony S. Morton and Laura Donahue, as well as by his former girlfriend, Barak.

A Chase Bank located at 6145 Northwest Highway, Chicago, was robbed on January 11, 2008 by a lone robber. Surveillance photos showed a white male wearing a black cap, black jacket, gray gloves and a black scarf. Over a year after the robbery, on February 19, 2009, two FBI agents presented the surveillance photos to Barak who, upon viewing them, said she was positive that the person in the photos was Christopher Consago. She said that she recognized Christopher by his nose and glasses and by the gray gloves, and that she recognized a bag in his possession as her brother's. On March 5, 2009, one of the agents showed the surveillance photos to Morton, who had been Consago's probation officer during January 2008; Morton identified Consago as the person in the surveillance photos. On the same day, an agent showed Donahue

the pictures. Donahue had supervised Consago from May until December 2008. She said that the person in the photos looked like Consago but she could not make a positive identification.

Trying mightily to squeeze this square peg of showing non-victims who know the defendant surveillance photos of the perpetrator into the round hole of the typical lineup case, where victims are shown photographs of possible suspects, defendant argues that the showing of photographs showing one perpetrator is analogous to a single suspect lineup and must be suppressed. The government properly responds that this case is nothing like the single photo lineup cases; it argues this indisputable point for many pages.

The issue is not the issue identified by the defendant, and it is not as simple as the government, addressing itself only to the defendant's argument, would suggest. When law enforcement officers pick out an individual's girlfriend and his probation officers to identify an individual shown in surveillance photos of a bank robbery, they are implicitly telling the witnesses that they believe that the witnesses' boyfriend or supervisee is the perpetrator. The possibility of the witnesses' identification being influenced by the known suspicions of the agents (that the person the witnesses know is the person in the photographs) is the same fear of such influence which motivates the law's concern about one-person showups. *See, e.g.*, *Foster v. California*, 394 U.S. 440, 443 (1969) ("The suggestive elements in this identification procedure made it all but inevitable that David would identify petitioner whether or not he was in fact 'the man.' In effect, the police repeatedly said to the witness, 'This is the man.'" (citing *Biggers v. Tenn.*, 390 U.S. 404, 407 (1968) (Douglas, J., dissenting))).

The court believes that the likelihood that the probation officers knew that the officers believed the person in the surveillance photos was Consago entitles Consago to a hearing at which he can explore the extent to which the agents' suspicions were relayed to the probation

officers. In the case of Barak, it is possible that Barak accused Consago before the agents showed her the surveillance photos; were that the case, the possibility that the agents influenced *her* would be less worrisome. Still, the government's briefs do not eliminate the possibility that her identification was influenced by the agents and since that is a possibility, Consago should also have an opportunity to probe the circumstances of her identification.

It is clear beyond dispute that the defendant has the burden to show that the identification procedure employed was unreasonably suggestive and that, if so, the court must determine whether the identification, viewed in light of the totality of the circumstances, "is reliable despite the suggestive procedures" employed. *United States v. Funches*, 84 F.3d 249, 253 (7th Cir. 1996). In establishing that the agents showed surveillance photos of the perpetrator to three people who knew defendant Consago, the defendant has adequately raised the question of whether the agents' suspicions of Consago's involvement, manifested in their choosing these three witnesses, unduly influenced the witnesses' identification. The court will hold a hearing at which the circumstances of these identifications can be more fully explored.

C. ***Defendant's Motion to Exclude Lay Opinion Identification Testimony and Evidence Pursuant to Federal Rules of Evidence 701 and 403 and Request for an Evidentiary Hearing***

Defendant moves to exclude the identification testimony of Jennifer Barak, Tony Morton and Laura Donahue on the basis of Federal Rule of Evidence 701, arguing that the identification procedure gave rise to a substantial likelihood of misidentification, and on the basis of Rule 403, arguing that unfair prejudice outweighs any probative value.

To the extent defendant argues that the identification procedure was suggestive and led to a substantial likelihood of misidentification, that issue will be dealt with in the hearing described above. To the extent the defendant argues that Rule 403 bars the evidence, that may be the case

only if the court first finds that the identification procedures created a reasonable possibility of misidentification; to the extent the identifications are reliable, Rule 403 does not bar their admissibility since they are reliable evidence of a critical fact in issue and as such, they are properly and not improperly prejudicial. This section of this ruling, then, addresses only the argument that lay opinion testimony on identification is inadmissible under Rule 701.

As Consago concedes, the Seventh Circuit has held that lay identification testimony is admissible in circumstances very similar to those present here. In *United States v. White*, 639 F.3d 331 (7th Cir. 2011), the defendant's sister and ex-girlfriend identified defendant as the individual seen in surveillance photographs of a bank robbery. The court ruled that the fact that these witnesses were very familiar with the defendant satisfied the requirement that their opinions were rationally based on their perceptions. The court also held that the witnesses' identification met Rule 701's requirement of being helpful to the determination of a fact in issue – the identity of the person shown in the surveillance photographs. Consago is not exactly correct that the court in *White* was limited to plain error review because no objection had been made at trial; no objection was made to the sister's testimony but an objection had been made to the ex-girlfriend's identification testimony; the court made clear that it applied plain error review in one instance and abuse of discretion review in the other, and it made no distinction between them in reaching its result.

In *White,* the court relied on *United States v. Towns,* 913 F.2d 434 (7th Cir. 1990). In *Towns,* the court held that lay identification testimony is admissible under Rule 701 if it is "rationally based on the perception of the witness" and "helpful to . . . the determination of a fact in issue;" "the district judge's decision whether to admit [such testimony] is committed to the" judge's discretion and will not be reversed unless that discretion is abused. *Id.* at 445 (quoting

Fed. R. Evid. 701 and *Kelsay v. Consol. Rail Corp.*, 749 F.2d 437, 448 (7th Cir. 1984)) (internal quotation marks omitted). "'Generally, a lay witness may testify regarding the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.'" *White*, 639 F.3d at 336 (quoting *Towns*, 913 F.2d at 445) (some internal quotation marks omitted). While lay witness testimony is particularly appropriate when the witness was familiar with the defendant's appearance at the time of the crime charged and the defendant's appearance has changed by the time of trial, it is not necessary that the defendant's appearance has changed, as long as the witness' testimony is helpful to the determination of a fact in issue. *Id.* In the present case as in *Towns*, the person depicted in the surveillance photos is somewhat disguised and/or obscured and a witness who was familiar with the person pictured at the time of the surveillance photograph would presumably be better able than most jurors to perceive similarities and differences and make a reliable identification. The Seventh Circuit obviously believed, as does this court, that a witness who is very familiar with the defendant may be better able to identify a person partially obscured in a surveillance photograph than is a juror, who has never seen the defendant before the trial or at close range.

If the court finds that the identification procedures were suggestive and that the resulting identification is unreliable, the evidence will not be permitted. But to the extent that the defendant's objection is based on the fact that the witnesses are lay witnesses, the objection is overruled. If the court admits the identification evidence of the two probation officers, it will work with the parties to find the least prejudicial way, and the way most conducive to effective cross-examination, to identify these individuals and the basis for their knowledge of the defendants.

## II. CONCLUSION

Consago is granted an evidentiary hearing for the reasons stated above. His motion to compel disclosure and inspection of mental health records is denied insofar as it is based upon *Brady*, and his motion to exclude lay opinion identification testimony is denied insofar as it is based on the lay status of the identification witnesses.

ENTER:

                                            /s/
                                  JOAN B. GOTTSCHALL
                                  United States District Judge

DATED: September 26, 2011